**In re CAL FARM SUPPLY COMPANY, a California corporation.**

**Bankruptcy No. 287–04176–A–7.**
**Motion No. CRW–10.**

United States Bankruptcy Court,
E.D. California.

July 20, 1989.

462

Charles Whitworth, West Sacramento, Cal., Trustee.

Cooper & Shaffer, W. Austin Cooper, W. Sacramento, Cal.

## MEMORANDUM OPINION AND DECISION

### FACTS

LOREN S. DAHL, Chief Judge.

On July 21, 1987, Cal–Farm Supply Company, a retailer of agricultural products with various outlets throughout this district, filed a chapter 7 petition and on that same date the court appointed Charles R. Whitworth as trustee. On July 31, 1987, the trustee filed an application to employ an auctioneer to conduct a piecemeal auction sale. The declaration of licensed public auctioneer Robert Geiger was attached to the application. As requested in the application, the court authorized the trustee to employ Robert Geiger as auctioneer on July 31, 1987 on the following terms: 1) the auctioneer would receive a commission of ten percent (10%) on the gross sales and be reimbursed for expenses; and, 2) the auctioneer could retain those sums due as commissions and expenses and turnover to the trustee the net proceeds due to the estate.

The auctioneer conducted piecemeal sales at the Stockton, Hamilton City, and Redding locations of the debtor. At the conclusion of the piecemeal sales, the auctioneer sold the remaining supplies and equipment of the debtor at two auction sales held in Stockton and Rancho Cordova.

On December 22, 1988, the trustee filed a motion for an order approving the compensation of auctioneer in the amount of $84,769.23 in commissions and $95,386.63 in expenses.[1] The order was denied without prejudice on March 30, 1989 after the court found that the summary of revenue and expenses attached to the motion did not provide any detail of the services rendered or expenses incurred. The order provided that in any future motion for compensation, the auctioneer must provide original invoices for expenses, time and payroll records, and "high bid slips". The court also stated that strict compliance with Bankruptcy Rule 6004(f)(1) would be required.

In the present amended motion for order approving compensation of auctioneer filed on July 20, 1989, the trustee seeks the same amount in compensation and expenses for the auctioneer as he did in his prior motion. The motion states that the auctioneer has turned over to the trustee $667,536.45 and has retained the total of $180,155.86 as commissions and expenses. In an attempt to comply with this court's prior order, the trustee has provided various documents which evidence the amount of expenses incurred and the sales proceeds received by the auctioneer.

After a careful review of the documents provided and the declarations of the auctioneer and of the trustee filed on July 20, 1989, the court approves the compensation of the auctioneer in the amount of $84,769.23. As to the $95,386.63 in expenses, the court approves the retention by the auctioneer of $45,069.28. For the reasons set forth below, the court does not approve $50,317.35 claimed by the auctioneer as labor and related expenses and orders that this amount be turned over to the trustee forthwith.

### DISCUSSION

*Labor Costs and Overhead*

The starting point to any request for compensation or reimbursement of expenses is 11 U.S.C. secs. 330(a)(1) and (2) which provide,

(a) After notice to any parties in interest and to the United States trustee and a

---

1. The total amount of expenses actually incurred by the auctioneer was $126,538.05. According to the declaration of the trustee filed on July 20, 1989, $31,151.42 was previously paid to the auctioneer as partial reimbursement for security services. Thus, the court calculates the expenses to be $31,151.42 plus the present request of $95,386.63 for a total of $126,538.05.

hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

Under sec. 330 compensation and the reimbursement of expenses are determined according to the same standard of reasonableness. 2 *Collier on Bankr.* para. 330.06[1] (15th ed. 1989). In allowing expenses to be paid from the estate, the court must consider whether the expenses benefitted the estate. *Id.*

The court recognizes the wide divergence of case law among the bankruptcy courts regarding what is a reimbursable expense. *See Id.* at para. 330.06[3] at note 6b. This court has held previously that an attorney for a debtor in possession cannot be reimbursed for secretarial overtime costs because such costs are a part of an attorney's customary overhead. *In re Pacific Express, Inc.*, 56 B.R. 859, 866 (Bankr.E.D. Cal.1985). *See also In re Beck–Rumbaugh Associates*, 68 B.R. 882, 888 (Bankr.E.D.Pa. 1987); *Matter of Affinito & Son, Inc.*, 63 B.R. 495, 500 (Bankr.W.D.Pa.1986).

The documents submitted reveal that out of the $95,386.63 claimed and retained as expenses, the auctioneer attributes $50,317.35 to his labor costs, food and lodging charges, and other miscellaneous expenses. The payroll records show the following labor costs for the three piecemeal and two auction sales.

### STOCKTON PIECEMEAL SALE

| Item | Amount |
| --- | --- |
| 1. labor on mailers | $ 400.00 |
| 2. labor (college students) | $10,496.37 |
| 3. wages to Sandra McGowan, supervisor | $ 8,250.00 |
| 4. food, costs, lodging for McGowan while in Stockton | $ 1,308.61 |
| Total labor costs for Stockton | $20,454.98 |

### HAMILTON CITY PIECEMEAL SALE

| Item | Amount |
| --- | --- |
| 1. labor to conduct sale and clean-up | $ 5,564.00 |
| 2. lodging for labor from Sacramento | $ 984.07 |
| 3. Miscellaneous (gas receipts groceries, etc. for travel to locale) | $ 173.61 |
| Total labor costs for Hamilton City | $ 6,721.68 |

### REDDING PIECEMEAL SALE

| Item | Amount |
| --- | --- |
| 1. labor on mailers | $ 400.00 |
| 2. labor to conduct sale and clean-up (includes employee mileage) | $11,102.51 |
| 3. wages to Mike Geiger, supervisor | $ 4,500.00 |
| 4. lodging for Mike Geiger | $ 2,318.57 |
| 5. travel, gas, and food for Mike Geiger | $ 1,789.85 |
| Total labor costs for Redding | $20,110.93 |

<u>Stockton Auction Sale</u>

| Item | Amount |
|---|---|
| 1. labor | $ 2,495.00 |
| 2. labor on mailers | 100.00 |
| 3. mileage and gas | 64.46 |
| Total labor costs for auction | $ 2,659.46 |

<u>Rancho Cordova Auction Sale</u>

| | |
|---|---|
| 1. debtor's share of expenses | $ 370.30 |
| **TOTAL LABOR COSTS** | **$50,317.35** |

■ The court finds that the estate should not be burdened with the labor expenses incurred by the auctioneer. These expenses are akin to the secretarial costs of the attorney for the debtor in this court's *Pacific Express* decision. As such, the labor expenses of the auctioneer are a part of his customary overhead and should be paid out of the fees received by the auctioneer.[2]

■ Even if this court were to find that labor costs are a reimbursable expense, the auctioneer has not shown why the labor costs were necessary and how they benefitted the estate. The court questions whether the piecemeal sale method actually was the best way to liquidate inventory of the estate. The only evidence before the court is the statement by the auctioneer that he and the trustee believed that a piecemeal sale would generate more money for the estate. *See* declaration of Robert Geiger filed July 20, 1989. He does not provide, however, any facts or otherwise substantiate this bare conclusion. Although the court authorized the trustee to employ an auctioneer to conduct piecemeal sales, the court did not order that such a sale be conducted. At all times, the trustee had the discretion to decide whether the piece-

meal sale route truly was in the best interests of the estate.

The court questions whether it was necessary for the trustee to hire an auctioneer once the decision to conduct a piecemeal sale was made. The chapter 7 petition was filed on July 21, 1987 and the question number 1(c) to the statement of affairs states that the business operations of the debtor terminated on July 22, 1987. It is obvious that the debtor had employees at its various retail locations when the bankruptcy petition was filed. The trustee could have retained the debtor's employees to conduct the three piecemeal sales which would have reduced greatly the expenses to the estate. The auctioneer likewise could have retained the debtor's employees to conduct the piecemeal sales. Instead, the auctioneer hired many of his employees from Sacramento and then transported them to the piecemeal sale sites.

Neither the trustee nor the auctioneer have shown how the piecemeal sales and the large amount of expenses generated by those sales were in the best interests of the estate.

*11 U.S.C. sec. 328(a)*

At this point, the court finds that a discussion of 11 U.S.C. sec. 328(a) is warranted because of the trustee's reference to the language of this section in his application to employ auctioneer filed July 31, 1987.[3]

---

2. The application to employ auctioneer provided, "[a]uctioneer to be reimbursed actual and necessary expenses, including but not limited to: Set-up, advertising, lotting, security personnel, check-out, clean up and accounting in an amount approved by the trustee." Although the court authorized the auctioneer to retain those sums due as commissions and expenses, this does not mean that the auctioneer must be accorded an allowance. There is no absolute right to compensation or reimbursement under the Code. 2 Collier on Bankr. at para. 330.06[1]. Instead, it is well-settled that the court

has an independent duty to scrutinize all requests for fees and expense reimbursement. *In re General Oil Distributors, Inc.*, 51 B.R. 794, 799 (Bankr.E.D.N.Y.1985).

3. Paragraph 7 of the application states, [s]aid auctioneer is aware of the provisions of 11 U.S.C. sec. 328 and has agreed, notwithstanding the terms and conditions of employment herein set forth, that the court may allow compensation different than the terms stated herein if such terms and conditions prove to have been improvident in light of developments unantic-

The compensation provided for in sec. 330(a) is subject to sec. 328(a). In imposing a limitation on the compensation of professional persons, sec. 328(a) states that a professional person may be employed by the trustee, with court approval,

> on any reasonable terms and conditions of employment.... Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

■ Although sec. 328(a) allows the bankruptcy court substantial discretion in altering a fee agreement when the circumstances warrant, absent evidence of any "unanticipated developments" that justify such a departure, the court may not award compensation different from that prescribed in the order authorizing employment. *In re Confections by Sandra, Inc.,* 83 B.R. 729 (Bankr. 9th Cir.1987). In the *Confections* case, an attorney employed pursuant to a court order appealed an order of the bankruptcy court that awarded him attorney's fees substantially less than the amount set forth in the court approved fee agreement. In holding that the bankruptcy court abused its discretion by departing from the fixed amount of compensation, the Bankruptcy Appellate Panel for the Ninth Circuit found no evidence of "unanticipated developments". However, the decision was quick to point out that, for purposes of 328(a), the term "unanticipated developments" is subject to broad interpretation and the bankruptcy courts have substantial discretion in altering fee agreements when the circumstances warrant.

The facts of the instant case are distinguishable from those in *Confections* on at least one important point. In that case, the bankruptcy court altered a previously fixed fee agreement. In this case, however, it is the auctioneer's *expenses* and not his fees that are being reduced. The language in *Confections* is concerned solely with limitations on fee awards. Indeed, the very language of sec. 328(a) only discusses limitations on the court's award of compensation.

Research of case law in this area reveals that most sec. 328(a) cases involve limitations on fees or compensation. Therefore, this court seriously questions whether sec. 328(a) and the *Confections* case apply when the court reduces the amount of expenses that the professional may be reimbursed on the basis that the claimed expenses are improper.

■ This court does not dispute that the auctioneer is entitled to receive the ten percent commission as originally specified in the employment order. The court does hold, however, that limitations on the reimbursement of expenses are not subject to the standard articulated in the *Confections* case.

■ Even assuming arguendo that sec. 328(a) and the *Confections* case do apply to expenses, it is the opinion of this court that at the time the order authorizing employment was issued, it was not possible to anticipate that the auctioneer would later request reimbursement for expenses that are customarily not compensated since they constitute ordinary overhead. If a professional was permitted to perform his services and subsequently seek reimbursement for any and all expenses without any kind of court review, the effect of such a practice would be to give the professional carte blanche status with the court. There is no way for a court to anticipate, in its initial order authorizing employment, the plethora of expenses that might possibly be sought by the professional at the conclusion of his employment. Therefore, even if sec. 328(a) applies, the court holds that the auctioneer's request for expenses customarily considered to be ordinary overhead is an "unanticipated development" and the court may limit the reimbursement of expenses to those that are reasonable.

### Return of the $50,317.35 to the estate

■ The court finds that the auctioneer is a fiduciary of the bankruptcy estate and,

ipated at the time of the fixing of such terms

and conditions.

as such, the $50,317.35 which must be returned is a trust fund.

Auctioneers are licensed and regulated according to California law. Cal.Bus. & Prof.Code secs. 5700 et seq. An auctioneer is primarily the agent of the person in whose behalf the sale is conducted and is exclusively such until the property is sold to the highest bidder. Cal.Civ.Code sec. 2362; 7 *Cal Jur.3d*, Auctions and Auctioneers, sec. 8 (3rd ed. 1989). Upon the fall of the hammer, the auctioneer becomes the agent of both the buyer and seller until the sale is consummated. 7 *Cal Jur.3d*, sec. 8.

An agent is a fiduciary and has an obligation of diligent and faithful service similar to that of a trustee. Cal.Civ.Code sec. 2322(c); 1 Witkin, *Summary of California Law*, sec. 41 (9th ed. 1989).

Robert Geiger was appointed by this court as auctioneer and, thus, under California agency law he became a fiduciary of the estate.[4] When he sold property of his principal or the estate, the funds he received were trust funds. *Cf. In re Martin Fein & Co.*, 43 B.R. 623, 626 (Bankr.E.D.N.Y.1984) (under New York law a trust relationship exists between an auctioneer and seller such that a constructive trust can be imposed upon funds received by the auctioneer from the sale of his principal's property).

Further support for this court's holding that the funds received by the auctioneer are trust funds can be found in Cal.Bus. & Prof.Code sec. 5775(n) which requires auctioneers to "[m]aintain the funds of all owners ... and other clients and customers, separate from his or her personal funds and accounts." The California legislature recognized the special nature of the

proceeds received by the auctioneer from the sale of property belonging to another.

*In re C & P Auto Transport, Inc.*, 94 B.R. 682 (Bankr.E.D.Cal.1988) also supports the court's present holding. Citing 11 U.S.C. sec. 541, Judge Klein held that the retainer which a debtor's attorney receives remains property of the estate until the court approves a fee for actual services rendered and orders payment from the retainer. 94 B.R. at 689. Judge Klein stated that the retainer is property in which both the client and attorney have an interest and, thus, is the proper subject of a trust. *Id.*

A parallel can be drawn to the present case. Although an attorney's prepetition retainer is not involved, the auctioneer here retained sales proceeds which belonged to the estate. Both the estate and the auctioneer had an interest in those proceeds. The proceeds retained by the auctioneer as his expenses remain property of the estate until this court approves payment of all of the expenses and regardless whether the auctioneer may have transferred the proceeds to a different entity.

## CONCLUSION

The court approves the fees of $84,769.23 requested by the auctioneer and expenses in the amount of $45,069.28. The $50,-317.35 which the auctioneer attributes to labor expenses, however, is part of his customary overhead and must be paid from the fees he has received. Even if the court were to allow the expenses, the auctioneer has not proven why they were necessary and how they benefitted the estate.

Robert Geiger is hereby ordered to turn over forthwith to the trustee the $50,317.35 which this court will not allow as a reim-

---

**4.** In the prior order denying the trustee's motion for compensation of the auctioneer *without prejudice*, the court noted that the trustee's motion requested compensation for Geiger Auction Sales, Inc. but that the court had appointed Robert Geiger as auctioneer. The court then asked for clarification of this inconsistency in any future fee applications.

In the declaration filed with this court on July 20, 1989, Robert Geiger states that he was employed by the trustee to conduct the auction sale and that he provided the "liquidation and auc-

tion services to the estate through Geiger Auction Sales, Inc." Robert Geiger states that he is the sole shareholder of Geiger Auction Sales, Inc. which filed a chapter 11 petition on April 13, 1989 (case no. 289–02504–B–11).

The present motion seeks compensation for Robert Geiger as auctioneer. If Geiger Auction Sales, Inc. actually performed the services, however, then this court would deny all compensation and expenses to Robert Geiger on the grounds that no services were performed by him.

bursable expense and which remains property of the estate. In the alternative, if Robert Geiger turned the money he retained over to his company, Geiger Auction Sales, Inc., then the court hereby orders that corporation to turn over $50,317.35 forthwith to the trustee. The court finds that a fiduciary relationship exists between the auctioneer and the estate and that the $50,317.35 is property of the estate and is held in trust by Robert Geiger or any entity to whom Geiger transferred the money.

This Memorandum Opinion and Decision shall constitute findings of fact and conclusions of law. The trustee shall prepare and submit an order consistent herewith.