**In re ZENITH LABORATORIES, INC., Zenith Parenterals, Inc., Zenith Laboratories Caribe, Inc., RMWB Associates, Inc., Debtors.**

**Bankruptcy Nos. 88–03602, 88–03603, 88–03648 and 88–04263.**

United States Bankruptcy Court,
D. New Jersey.

Sept. 7, 1990.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime by Ira M. Levee, Roseland, N.J., for debtors.

Pitney, Hardin, Kipp & Szuch by Roger C. Ward, Morristown, N.J., for claimant.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

This case comes before me on the debtors' objections to the claim of Security Pacific National Trust Co. (New York) for legal services rendered to it and fees paid by it to Pitney, Hardin, Kipp & Szuch, its

attorneys, prior to and during the pendency of the case. Objections to claims are core proceedings over which this court has jurisdiction under 28 U.S.C. §§ 157(b)(2)(B) and 1334(a). Based upon the arguments of counsel at the hearing on this matter, held on June 12, 1990, and the memoranda and other documents filed by the parties, I make the following findings of fact and conclusions of law.

## · FACTS

On or about November 1, 1986, the debtors entered into a Financing Agreement with the New Jersey Economic Development Authority ("NJEDA") to finance the acquisition and construction of new facilities, and to equip them as needed. On even date therewith, NJEDA entered into a Trust Indenture with Security Pacific National Trust Co. ("SPNT") under which SPNT agreed to act as Indenture Trustee for the benefit, security, and protection of holders of Industrial Revenue Bonds issued by NJEDA Marine Midland Adjustable Rate Service. The sale of these Bonds produced the funds lent by NJEDA under the Financing Agreement.

Prior to the filing of the petition for relief in the cases, SPNT requested that its attorneys review certain documents and advise SPNT regarding its duties and obligations under the Trust Indenture, and other services as needed from time to time regarding action to be taken by SPNT as Trustee. Charges for the legal services rendered amounted to approximately $2,000.

The petitions in these cases were filed on May 4, 1988, and the trustee, upon the occurrence of this Event of Default,[1] drew down upon the letter of credit issued by Marine Midland Bank, N.A. in order to pay the Bonds in full on May 5, 1988.[2] Just

---

1. Section 601 of the Trust Indenture lists the Event of Default thereunder; subsection (d) thereof *refers to an Event of Default under* Section 10.1(c) of the Financing Agreement, which provides that "[t]he occurrence of an Act of Bankruptcy" is an Event of Default under that Agreement. Thus, the filing of the petitions for relief constituted an Event of Default under both contracts.

2. This court previously dismissed an adversary proceeding filed by the debtor which challenged SPNT's action in drawing upon the letter of credit as unauthorized, unwarranted, and as a violation of SPNT's fiduciary duty as Trustee. *Zenith Laboratories v. Security Pacific National Trust Co. (New York) (In re Zenith Laboratories, Inc.,* 104 B.R. 667 (Bankr.D.N.J.1989). I note

prior to and on these dates, charges for legal services were incurred by SPNT in the approximate amount of $2500. These services were provided by the attorneys to SPNT as Trustee, and related to SPNT's abilities, duties and obligations as Trustee upon the occurrence of an Event of Default.

A secured proof of claim was filed by SPNT for $4600 on July 25, 1988, asserting the claim was based on the indemnification provisions in the Trust Indenture and Financing Agreement. Thereafter, in January, 1989, SPNT incurred additional legal fees and expenses in defending an adversary proceeding brought by the debtor which challenged the Trustee's action in drawing on the letter of credit to pay the Bonds; this adversary was dismissed and, after motion of the Attorneys and a hearing thereon, an order was entered on December 11, 1989, which permitted the Attorneys to amend their proof of claim to include amounts for fees incurred in representing SPNT in that matter.[3]

The debtors assert SPNT's amended claim is not adequately supported; that they have no obligation under either the Trust Indenture or the Financing Agreement to pay these funds; that, to the extent this claim is allowed by the court, it should be allowed only as a general, unsecured claim, without priority; and that the claim should be disallowed in its entirety for the failure of SPNT to file the amended claim in estimated amount prior to the bar date. The Attorneys and SPNT oppose the objection to claim, and assert it should be allowed in its entirety as a secured amount.

## DISCUSSIONS

As to the last basis herein listed for the objection to claim, I note that Bankruptcy

Rule 3003(c)(3) states this "court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Having already fixed such date and determined the existence of cause sufficient to extend it for this claim, I will not now reconsider the Order of December 11, 1989, permitting the late amendment of this claim. Suffice it to say that this basis for the objection has previously been determined and the court will not permit reargument of issues previously decided.

The debtors contend the proof of claim is not adequately supported and, due to the vagueness of the time entries, this court should disallow it as it is impossible to determine whether the claim represents expenses of professionals retained by SPNT to aid it in its duties as Indenture Trustee. This basis for the objection is interwoven with the debtors' complaints that the Financing Agreement and Trust Indenture neither permit nor require indemnification of these expenses. In response, SPNT asserts the claim more than meets the applicable requirements for claims under Bankruptcy Rule 3001 and 11 U.S.C. § 330, are sufficiently detailed to permit ready identification of legal services provided or expenses incurred, and refers the court to the indemnification provisions of the above-named documents [4] to show these expenses are of the type to which those provisions apply.

Initially I note that Bankruptcy Rule 3001 requires that claims founded on writings be accompanied by copies of the documents. While SPNT's claim would not normally involve the specificity required of fee applications under 11 U.S.C. § 330, any professional fees sought to be paid from a debtor's estate should be based upon "meticulous contemporaneous time records ...

again, however, that SPNT's actions in so doing are mandated by the acceleration provision of Section 602, which provides that all outstanding Bonds "become immediately due and payable without further action on the part of any person" upon the occurrence of an Event of Default under Section 601(d) of the Trust Indenture. Notice to the debtor as Obligor under the Bonds and Finance Agreement was not required prior to such drawing down by SPNT.

3. See footnote 2, *supra,* on the adversary proceeding. The claim requests additional amounts of $41,035.00 in legal fees, and 1,991.51 in disbursements.

4. The Financing Agreement and Trust Indenture were previously submitted to the court for its review during the above-mentioned adversary proceeding commenced by the debtors against SPNT.

[which] should reveal sufficient data to enable the Court to make an informed judgment about the specific tasks and hours allotted." *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 582 (Bankr.D.Utah 1985). This court then has a duty to determine the reasonableness of the fee requests, which determination is left to the sound discretion of the trial judge.

I am satisfied that the claim and its supporting documents sufficiently detail the fees and expenses incurred. The entries made by the Attorneys are related to their employment by SPNT as Trustee, and are detailed to show performance or provision of services tailored to the needs of Indenture Trustee as outlined in papers filed by SPNT and the Attorneys.

■ As to grounds for this reimbursement, both the Financing Agreement and Trust Indenture include indemnification provisions which provide, *inter alia*, that the Trustee (SPNT) is entitled to receive advice of counsel and to reimbursement for resulting compensation and expenses paid. The indemnification extends to any compensation or expenses paid by the Trustee in execution of its powers and duties, or fulfillment of its obligations under the Trust Indenture, or which are paid to enforce the performance or observance by the Obligor (debtors) of its duties and obligations under the Finance Agreement.[5] Article V of the Finance Agreement, together with Section 201 of the Trust Indenture granted SPNT a security interest in funds held in the Construction Fund to the extent such expenses were incurred.

■ As to the initial $4,600 claim, the fees and expenses thus represented are clearly compensable under the Agreement and Indenture. All of these fees and expenses result from provision to SPNT of legal advice directly related to its duties as Trustee. In my opinion, the legal fees and expenses incurred by SPNT in defending the debtors' adversary proceeding were also related to SPNT's duties as Trustee, since they were incurred by SPNT in defending an attack on its actions as being outside the scope of its authority under the Agreement and Indenture. The description of reimbursable expenses is, in the opinion of the court, sufficiently broad to warrant inclusion of these fees and expenses in any indemnification sought by SPNT, and I so hold.

The debtors argue the recovery of fees for attorneys was, at the time the agreement was entered, intended only to cover fees resulting from the defense by the Trustee of suits by third parties and not challenges from the debtors. The Attorneys, understandably, point to the terms of the documents and contend there is no such limitation to be found in the agreements of the parties.

■ The intent of the parties in entering a contract is to be determined from the whole agreement, and extrinsic or parol evidence is to be considered only if the language is ambiguous. *Linder v. Inhalation Therapy Services, Inc.,* 834 F.2d 306 (3rd Cir.1987). If the parties have adopted a writing or writings as a final expression of their agreement, and the terms thereof are clear, unambiguous, and susceptible to only one interpretation, no extrinsic evidence of intent will be considered. *Fr. Winker KG v. Stoller,* 839 F.2d 1002 (3rd Cir.1988). Here, it is clear from reading both documents that they are substantially interrelated and should be read together for clear understanding of the agreement between these parties. None of the indemnification provisions are ambiguous; all provide for indemnification to SPNT for legal expenses incurred in performing its obligations or defending its actions as Trustee.

The intent of the parties is clear and unambiguous. Any argument that the legal expenses incurred by SPNT in defending the adversary proceeding brought by the debtors were outside the contemplation of the parties is barred by the parol evidence rule. I conclude the additional fees are within the scope of the indemnification provisions, and were properly added to the amount sought in SPNT's proof of claim, as amended.

---

**5.** Section 10.3, Finance Agreement; Section 701, Trust Indenture.

Finally, the debtors contend the claim, if allowed, should be allowed only as a general, unsecured claim. The claim was filed as secured pursuant to the security provisions stated *supra.*

On the date the petitions were filed, there was approximately $74,000 in the Construction Fund maintained under the Finance Agreement and subject to SPNT's control under the Trust Indenture. When SPNT drew on the letter of credit to pay the Revenue Bonds' holders, it also transferred the Construction Fund as part of the payments made to the holders; the remaining amounts due to the holders constitute the total amount drawn down on the letter of credit.

Prior to its payment of the Bonds, SPNT had a security interest in the Construction Fund to the extent to which it held claims for expenses in acting as Trustee. This security interest was perfected by its constructive possession of the Fund as collateral for the debt. N.J.S.A. 12A:9–305 (as amended, 1990); *see* N.J.S.A. 12A:9–302(1)(a) and :9–203 (as amended, 1990). By transferring monies from the Construction Fund, SPNT lost possession of its collateral and extinguished its security interest therein. N.J.S.A. 12A:9–305; *see Rosner v. Plaza Hotel Associates, Inc.,* 146 N.J.Super. 447, 370 A.2d 41 (App.Div.1977) (security interests are enforceable against debtors if creditors have possession of collateral or all applicable steps to perfect are completed).

Generally, claims secured by liens on property in which the estate has an interest are secured to the value of the property, and unsecured in an amount equal to the amount by which the claim (or lien) exceeds the value of the property. 11 U.S.C. § 506(a). Because this claim is secured by money not in the actual or constructive possession of the claimant, the value of the property (Construction Fund) is $0.00, and the entire claim is, under the Bankruptcy Code, only permitted to be allowed as a general, unsecured claim. There is no applicable priority status available to claimants under 11 U.S.C. § 507, so this claim must be classified, and may only be allowed, as a general, unsecured claim, without priority.

### CONCLUSION

For the reasons stated above, I hold the claim filed by SPNT for reimbursement of attorney's fees and expenses incurred is a general, unsecured claim, without priority, but shall be allowed as such in the full amount claimed under SPNT's amended claim. Claimants shall be paid in accordance with the provisions of the confirmed plan in these cases, on equal basis with other unsecured claimants.