### In re SPECIALTY PLYWOOD, INC., Debtor.

### MAX ROUSE & SONS, INC., Appellant,

### v.

### SPECIALTY PLYWOOD, INC., Appellee.

**BAP No. CC–92–1321–VPO.**
**Bankruptcy No. SA–91–33159 JW.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 20, 1993.

Decided Nov. 10, 1993.

Richard W. Labowe, Labowe & Hoffman, Los Angeles, CA, for appellant (Max Rouse & Sons, Inc.).

Mark M. Sharf, Angel & Neistat, Los Angeles, CA, for appellee (Specialty Plywood, Inc.).

Before VOLINN, PERRIS and OLLASON, Bankruptcy Judges.

### *OPINION*

#### PER CURIAM:

An auctioneer appeals the bankruptcy court's decision: (1) reducing its advertising expenses, (2) prorating its fee for conducting a liquidation sale of debtor's assets along with other administrative claims in an administratively insolvent estate, and (3) denying its request for reimbursement of legal fees. We affirm.

#### FACTS AND PROCEEDINGS BELOW

Chapter 11 debtor in possession, Specialty Plywood, Inc., (Specialty) manufactured plywood and veneers. The estate's major assets consisted of heavy equipment in which Sunwest Bank had a security interest for a loan balance of $168,000. Specialty determined that it could not effectively reorganize and decided to liquidate its assets, whose value it estimated to be $500,000 to $750,000. At the debtor's request, the court authorized the employment of Max Rouse & Sons, Inc. (Rouse) as auctioneer and authorized a sale out of the ordinary course of business. Both orders provide Rouse's fee to be ten percent (10%) of the gross sales proceeds, plus expenses.

The sale grossed only $242,207. At the debtor's request, Rouse paid Sunwest Bank $168,000, leaving in the estate a net amount of $74,207. Rouse claimed $24,220.70 as its ten percent commission and expenses of $34,043.41 for a total claim of $58,264.11. If this claim were paid, $15,942.09 would remain for payment of the other administrative claims which totalled $130,537.03.

The debtor objected to some of Rouse's expenses and also demanded that Rouse receive only a *pro rata* share of the proceeds

along with the other administrative claimants. When the debtor refused to prepare Rouse's fee application, Rouse hired an attorney to pursue its claim and added the $1,900 charge for legal services to its claim for expenses.

The court reduced Rouse's expenses by some $5,000, disallowing part of the expense for advertising and disallowing the legal fees in full, ultimately allowing Rouse $29,297.70 for expenses. The court allowed Rouse's ten percent commission in full, approving a total claim of $53,518.40. However, the court ordered that Rouse be paid the foregoing allowance on a *pro rata* basis with the other administrative claimants.[1] Rouse appealed. The court's Memorandum of Decision is published: *In re Specialty Plywood, Inc.,* 137 B.R. 960 (Bankr.C.D.Cal.1992).

#### ISSUES PRESENTED

Whether the bankruptcy court committed reversible error in the following determinations:

1. Reducing Rouse's advertising expenses by $3,500;

2. Ordering that Rouse be paid a *pro rata* share with other administrative claimants; and

3. Disallowing Rouse's request for reimbursement for legal fees.

#### STANDARD OF REVIEW

The trial court's reduction in advertising expenses as unnecessary is a finding of fact that is reviewed for clear error. *See* Fed.R.Bankr.P. 8013. A factual finding is clearly erroneous only if the appellate court, after reviewing the record, has a firm and definite conviction that a mistake has been committed. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Whether Rouse is entitled to payment of its fee ahead of other administrative claimants or must accept a pro rata share of the estate is a question of law also reviewed de novo.

---

1. A pro rata share of the estate including Rouse's fee and expenses would net all the claimants about 40 cents on the dollar. Allowing Rouse payment in full before prorating the remainder would net the remaining claimants only 12 cents on the dollar.

**630**

The court's disallowance of Rouse's legal fees involves interpretation of the contract between the parties and pertinent Bankruptcy Code sections—questions of law subject to *de novo* review—as well as review of pertinent underlying factual findings.

## DISCUSSION

*1. Whether the advertising expenses were properly reduced.*

Section 330(a) of the Bankruptcy Code[2] allows the court to award professionals "(1) reasonable compensation for actual, necessary services, . . . based on the nature, the extent, and the value of such services . . . and (2) reimbursement for actual, necessary expenses." Implicit therein is the authority to determine whether a claimed fee or expense is actual and necessary.

Rouse claimed advertising expenses of $22,561.73. The debtor objected to a portion of this expense because some of the items included in a brochure prepared for the auction were not part of the estate. The court reduced Rouse's claim for advertising expenses by $3,500 as expenses incurred in connection with the sale of non-estate property.

Rouse contended below that its advertising of non-estate equipment along with Specialty's equipment provided a benefit to Specialty as an audience draw and that it included these items in the brochure for that reason. This brochure was an eight page two-color brochure itemizing 71 tools under 27 headings. Thirty-two items were starred as equipment from Specialty Plywood. The brochure contained six pages of photographs. Of 31 photographs, eight were of non-estate items. In support of its claim for expenses, Rouse submitted receipts including a receipt for $9,480 for a production run of 20,000 copies of the brochure.

Fed.R.Bankr.P. 8013 instructs the reviewing court to give equal deference to the trial court's factual findings based upon written as well as oral evidence. Based on the evidence, the bankruptcy court determined that roughly 36% of that cost was incurred for advertising non-estate items. While the court did not elaborate, the court implicitly determined that this expense was of no benefit to the estate. Although the court referred to the "sparse record furnished by the parties," the record is sufficient to support the court's determination of the cost of non-estate advertising and its determination that it was not of value to the estate. While Rouse in its own judgment may have determined that these advertising costs were necessary and of benefit to the debtor, the court is not precluded from its own determination. Given the record in this appeal, we cannot say that the court's determination is clearly erroneous.

We reject Rouse's argument that the brochure was not competent evidence because the debtor submitted it without proper foundation.[3] While it is technically correct that the brochure was attached to the debtor's moving papers without foundation, Rouse does not deny that it produced the brochure, and its admission was not prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. Fed.R.Evid. 103(a). In any event, Rouse submitted invoices for this brochure and had the burden to demonstrate that the cost was reimbursable. This would involve consideration of the brochure itself. Accordingly, the court's disallowance of $3,500.00 of advertising expenses is affirmed.

*2. Whether Rouse should receive a pro rata share.*

The court ordered that Rouse be paid on a *pro rata* basis with other administrative

---

**2.** Unless otherwise stated, all references to "sections" refer to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

**3.** Rouse also argues that the judge disregarded testimony by Harold Rouse contradicting testimony of the debtor that Rouse had promised total expenses to the debtor would be under $20,000. Rouse has not shown that the court's decision was dependent on this testimony, how-

ever. In any event, a trial court is competent to choose which of two conflicting statements it believes. Rouse also contends that the debtor misled it into believing that it would bear the cost of advertising the other items. We note that this argument effectively waives Rouse's objection to consideration of the brochure and conclude that the court's refusal to hold the debtor to this alleged bargain was not error.

claimants. In effect, Rouse asked for, and the court denied, a superpriority status above the class of administrative claimants. Rouse cites *In re Anderson,* 66 B.R. 97 (9th Cir. BAP 1986) for the proposition that a professional hired to dispose of estate property should be paid in advance of other administrative claimants.

*Anderson* addressed the distribution of proceeds of a sale of secured property between a real estate agent and the secured creditor when the sum sought exceeded the proceeds of the sale. The Anderson court determined that the real estate agent should be paid in full, ahead of the secured creditor pursuant to 11 U.S.C. § 506(c) which permits a trustee to deduct the cost of sale from proceeds due a secured creditor, provided that the expenses are reasonable, necessary, and benefit the claim holder.

Because Rouse disbursed to Sunwest Bank its full share of the proceeds as secured creditor, *Anderson* is inapposite. The instant appeal addresses the question of priority between an auctioneer and other administrative creditors of the estate.

Prorationing is an unfortunate but foreseeable prospect for those engaged in the administration of a debtor's estate. It would be incongruous for Rouse to fare better than other creditors of the same class by virtue of what turned out to be a general misapprehension of the value of the estate assets. While Rouse in effect will not receive its fee in full from the estate, an auctioneer has no superpriority to other claimants in its class.

*Anderson* and § 506(c) do not apply because neither Rouse nor the bankruptcy estate sought to charge the secured creditor's interest with the costs of the sale. There is no other Code provision providing Rouse with any superpriority over the other administrative claimants. That being the case, the Code requires that the limited assets of the estate be distributed pro rata to creditors enjoying equal priority.

*3. Whether Rouse's legal fees were properly disallowed.*

As part of its application of reimbursement of expenses, Rouse sought reimbursement of legal fees incurred in preparing its application. It asserts that it is entitled to reimbursement of these fees on two bases—(1) it has a contractual right to recover fees and (2) it has a right to reimbursement of fees under § 330. It is arguable whether either basis, by itself or in combination with the other, can provide a legal ground for the reimbursement of legal fees incurred by a professional employed by the estate. We need not address these issues, however, because Rouse has not, under the facts of this case, established a right to reimbursement of the fees under either of these bases.

■ Turning first to Rouse's claim for reimbursement of the legal fees under the contract, Rouse relies primarily on the attorneys' fee provision of the contract and Cal. Civ.Code § 1717(a), which provides that in an action on a contract when the contract specifically provides that attorneys' fees incurred to enforce the contract shall be awarded to one of the parties, the prevailing party shall be entitled to attorneys' fees as an element of costs. Even if Rouse is deemed to be the prevailing party, the fees sought to be recovered by Rouse do not fall within the scope of the contract provision or this statute.

The agreement provides that the debtor shall hold Rouse harmless from reasonable attorneys' fees arising out of any failure of condition or breach of the agreement or in connection with any action arising out of this agreement. Section 1717(a) concerns attorneys' fees incurred to enforce the contract at issue. Rouse incurred the attorneys' fees at issue in filing its initial fee application and in appearing at the initial hearing on the application. The fees were not incurred in an action to enforce the agreement or arising out of a breach or failure of condition of the agreement. The fee application process did not arise out of a breach of the agreement [4] or concern a construction of the terms of the agreement or the issue of whether the debtor

---

4. Contrary to the auctioneer's contention, there is no provision in the agreement or in any bankruptcy court order authorizing the agreement

which required the debtor to submit a fee application on behalf of the auctioneer.

had complied with the agreement. The litigated issues in the fee application process were federal bankruptcy law issues, the litigation of which does not give rise to any rights to recover fees under a contractual fee provision such as the one at issue in this appeal. *See In re Fobian,* 951 F.2d 1149, 1153 (9th Cir.1991); *In re Coast Trading Co.,* 744 F.2d 686, 693 (9th Cir.1984).

 Rouse also implicitly contends that the legal fees can be recovered as costs of the auction, apparently under the agreement provision dealing with the reimbursement of costs.[5] The fees, however, were not advertising expenses, or expenses for preparing for, conducting or disposing of items after the auction. Nor are they auction costs as Rouse incurred the costs in connection with its application for payment rather than in connection with the auction. The legal fees, therefore, are not within the scope of either contract provision and Rouse has no contractual basis to recover the legal fees from the debtor.

Turning to the right to reimbursement of the fees under § 330(a), the debtor is correct that the legal fees cannot be recovered under § 330(a)(1). In seeking to recover the legal fees, Rouse is not seeking compensation for its services. Rather, it is seeking compensation for the services of its attorneys. Because those attorneys are professional persons who have not been employed by the estate, compensation for such attorneys is not within the scope of § 330(a)(1).[6]

 Section 330(a)(2) allows the bankruptcy court to award to a professional person reimbursement for actual, necessary expenses.[7] In order to be actual, an expense must be actually incurred. An expense is not actual to the extent it is based upon guesswork, formula or pro rata allocation. *In re Williams,* 102 B.R. 197, 199 (Bankr.N.D.Cal. 1989). An expense is necessary if it was incurred because it was required to accomplish properly the task for which the professional was employed. *See, e.g., In re Gillett Holdings, Inc.,* 137 B.R. 462, 471 (Bankr. D.Colo.1992); *In re Grabill Corp.,* 110 B.R. 356, 362 (Bankr.N.D.Ill.1990) (the expense of an attorney is necessary if it was required to accomplish proper representation of the client). The reimbursement of expenses is determined under the same standard of reasonableness as compensation for services under § 330(a)(1). *In re Cal Farm Supply Co.,* 110 B.R. 461, 463 (Bankr.E.D.Cal.1989) (citing 2 *Collier on Bankruptcy* ¶ 330.06[1] (15th ed. 1989). Thus, the court must consider whether the expenses at issue benefitted the estate. *Id.*

 The applicant carries the burden of establishing that it is entitled to the reimbursement of expenses. *Gillett Holdings,* 137 B.R. at 471; *Grabill Corp.,* 110 B.R. at 362. When a party seeks to recover legal fees as expenses, the detailed attorney compensation application standards of § 330(a)(1) should be applied by analogy and the applicant should submit billing statements from the attorney which contain sufficient data to

---

5. The pertinent provision of the agreement provided that the debtor shall hold the auctioneer:

 harmless from any loss, expenses or damages, including but not limited to reasonable attorneys' fees and court costs, arising out of any failure of condition herein, misstatement of fact or misrepresentation by owner, breach by owner of any covenant hereof, or in connection with any action arising out of this agreement.

6. For this reason, the holdings of cases such as *In re Nucorp Energy, Inc.,* 764 F.2d 655 (9th Cir.1985), are not directly applicable. Those cases dealt with the right of a professional employed by the estate to be compensated for the services they rendered in preparing and litigating the application for their own fees. This case, on the other hand, deals with the right of a profes-

sional person employed by the estate to recover, as reimbursable expenses, the attorney fees incurred in preparing an application for compensation of the professional by an attorney who was not employed by the estate. An additional distinguishing factor is that *Nucorp Energy* relied upon the practices employed in evaluating attorney fee applications in nonbankruptcy cases and upon the fact that attorneys are required to prepare detailed fee applications. Neither one of those factors are pertinent in this case.

7. We need not address whether an auctioneer employed by the estate is prevented, as a matter of law, from recovering legal fees under section 330(a)(2), for the services of its attorney employed without court approval because, even if reimbursement may be appropriate in certain cases, Rouse has not established its right to reimbursement in this case.

enable a court to make an informed judgment about the specific tasks and hours allotted. *See In re Zenith Laboratories, Inc.,* 119 B.R. 51, 53–54 (Bankr.D.N.J.1990) (applying the section 330(a)(1) standards to the determination of an indenture trustee's secured proof of claim to recover the attorney fees it paid to its attorneys under indemnity provisions of a contract); *see also Williams,* 102 B.R. at 199 (concrete and specific documentation of expenses is needed).

 Applying these standards in this case, Rouse fails, as a matter of law, to establish its right to reimbursement of the legal fees. The fees at issue were incurred in Rouse's attempt to recover compensation and expenses. They were not required to accomplish the auction—the task for which Rouse was retained.[8] Unlike an attorney's request for compensation, an auctioneer's request for compensation is not required to be supported with a detailed application delineating the nature of services provided, especially where, as in this case, Rouse is being compensated on a percentage basis.[9] In these circumstances, the policies underlying the rule allowing compensation for the time spent by attorneys in preparing their fee applications, *see In re Nucorp Energy, Inc.,* 764 F.2d 655 (9th Cir.1985), do not apply.

In addition, Rouse's application and supporting documentation fall far short of establishing its right to reimbursement of the legal fees. The amount of the legal fees sought was based upon an estimation and was not tied to actual expenses. Rouse presented no documentation with respect to the legal fees nor any attorney billing statements describing the nature of the services for which the expenses were incurred. Given this absence of evidentiary support for the request for reimbursement of the legal fees

and the fact that the fees did not pertain to the auction itself, the bankruptcy court correctly determined, as a matter of law,[10] that the legal fees were not reimbursable from the estate.

CONCLUSION

For the above discussed reasons, the bankruptcy court order is AFFIRMED.

---

**8.** To the extent the legal fee expenses included a $74 charge for UCC searches, the expenses arguably were required to properly conduct the auction and arguably benefitted the estate. Rouse, however, failed to sustain its burden of proof with respect to this expense by presenting documentation or evidence as to the nature of this expense.

**9.** As discussed above, an auctioneer's application for reimbursement of expenses requires more detailed support, especially where it seeks reim-

bursement of legal fees. An auctioneer's request for compensation on a percentage basis based upon an agreement previously approved by the court, however, does not require a detailed application.

**10.** This issue may be determined as a matter of law because, on the record presented to the Panel and the bankruptcy court, a reasonable fact finder could not conclude that the auctioneer established that the legal fees were actual and necessary expenses.