**In re GENEVA STEEL COMPANY, Debtor.**

**No. 99–21130GEC.**

United States Bankruptcy Court, D. Utah.

Feb. 7, 2001.

---

## ORDER ALLOWING REDUCED FEES AND EXPENSES

GLEN E. CLARK, Chief Judge.

The fourth fee application of The Blackstone Group ("Blackstone"), financial advisor to the Debtor, came before the Court on December 15, 2000. Mark J. Thompson of Simpson Thacher & Bartlett appeared in behalf of Blackstone; Steven J. McCardell of LeBoeuf, Lamb, Greene & MacRae, L.L.P., and Mark C. Ellenberg of Cadwalader, Wickersham & Taft appeared in behalf of Geneva Steel Company ("Geneva").

Objections to Blackstone's application were argued by Stephen E. Garcia of Hopkins & Sutter in behalf of the Official Committee of Bondholders ("Bondholders' Committee"), Jeffrey W. Shields of Jones, Waldo, Holbrook & McDonough, P.C., in behalf of GATX Capital Corporation ("GATX"), and Laurie A. Crandall in behalf of the United States Trustee.

The objections, among other things, argue that: (1) the fees sought by Blackstone represent a disproportionately large percentage of the total fees sought by all professionals involved in the case; (2) the ratio of Blackstone senior/junior professional time during this fee period is shifted in favor of junior time and away from senior professional time; (3) Blackstone's fee request for this application computes to a blended rate which is unreasonably high considering that 65 percent of the total hours itemized by Blackstone for this fee period are for junior professionals; (4) Blackstone's contribution to developing the capital structure for the plan of reorganization was minimal and the results obtained by Blackstone are not commensurate with the fees requested; and (5) Blackstone should not be compensated for the legal fees of Simpson Thacher & Bartlett ("Simpson Thacher") because Simpson Thacher was never appointed as a professional to serve in this case pursuant to 11 U.S.C. § 327.

### FACTS

On February 1, 1999, Geneva filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

On June 6, 1999, this Court granted the application to employ Blackstone as financial advisor to Geneva at the rate of $150,000.00 per month, subject to approval by the Court.

To date, Blackstone has billed Geneva almost $3,400,000.00 in fees and $270,000.00 in expenses, most of which has been allowed by the Court with the exception of $300,000.00 which was held back by Court order dated January 31, 2000, pending confirmation.

Previously, Blackstone has sought reimbursement of fees and expenses for services covering four month periods. Blackstone's fourth fee application seeks fees of $1,025,000.00 and expenses of $76,505.62

for services covering a period of eight months.

The $1,025,000.00 fee sought by Blackstone represents a voluntary reduction of $175,000.00 on the part of Blackstone. Pursuant to the order appointing Blackstone, it could have billed Geneva $150,000.00 per month for each of the eight months for a total fee of $1,200,000.00.

The compensation sought, hours worked, and average hourly rate for each of the Blackstone fee applications are as follows:

| Application Period | Compensation Sought | Hours | Average Hourly Rate |
|---|---|---|---|
| 1st Fee Application | $600,000.00 | 1,934 | $310.24 |
| 2nd Fee Application | $600,000.00 | 1,643 | $365.19 |
| 3rd Fee Application | $600,000.00 | 1,692.5 | $341.59 |
| 4th Fee Application | $1,025,000.00 | 1,909.25 | $536.86 |

Timothy R. Coleman ("Coleman") and Nicholas P. Leone ("Leone") are Blackstone's senior professionals involved in Geneva's reorganization efforts. The percentage of Blackstone's total time performed by Coleman and Leone combined ("Senior Professionals") is as follows:

| Application Period | Senior Professionals | Blackstone Total | Percent |
|---|---|---|---|
| 1st Application | 911.5 hours | 1,934 hours | 47.1% |
| 2nd Application | 567.0 hours | 1,643 hours | 34.5% |
| 3rd Application | 631.5 hours | 1,692.5 hours | 37.3% |
| 4th Application | 673.5 hours | 1,909.25 hours | 35.3% |

The average number of hours worked per month on the Geneva project by all Blackstone professionals is as follows:

| Application Period | Average Hours per Month — All Blackstone Professionals |
|---|---|
| 1st Application | 483.5 hours per month |
| 2nd Application | 410.8 hours per month |
| 3rd Application | 423.2 hours per month |
| 4th Application | 38.7 hours per month |

The average number of hours worked per month on the Geneva project by Blackstone Senior Professionals per month is as follows:

| Application Period | Average Hours per Month — Senior Professionals |
|---|---|
| 1st Application | 228 hours per month |
| 2nd Application | 142 hours per month |
| 3rd Application | 158 hours per month |
| 4th Application | 85 hours per month |

Blackstone used the services of Simpson Thacher to defend its second and third fee applications after the Bondholders' Committee and the United States Trustee filed written objections to Blackstone's fees.

Blackstone seeks reimbursement of Simpson Thacher's fees and expenses as an out-of-pocket expense pursuant to the Blackstone's retention and indemnity agreement signed by Geneva. Simpson Thacher's billing statement itemizes $26,226.00 in fees for legal services totaling 26.5 hours and expenses of $4,764.04 including $4,335.50 for two round trip flights from the East Coast to Salt Lake City, Utah.

### ANALYSIS

It is well-established law that the fee applicant bears the burden of establishing entitlement to fees and expenses. *Case v. Unified School District No. 233,* 157 F.3d 1243 (10th Cir.1998). Although Blackstone's appointment provides for a fixed fee of $150,000.00 per month plus expenses, such an appointment is by no means a guarantee that fees will be awarded in that fashion. The trial court may reject a fee contract in favor of the lodestar approach. *Beck v. Northern Natural Gas Co.,* 170 F.3d 1018 (10th Cir.1999).

The objections raised to this application are very similar to the objections raised to Blackstone's second fee application that was before the Court on December 17, 1999. At that hearing, Blackstone responded to the objections stating that the work performed by Blackstone ebbs and flows with the needs of the debtor, that its level of involvement during the first fee period was unexpectedly high, and that the decrease in hours and the shift from Senior Professionals to junior profes-

sionals during the second fee period would likely reverse when the time came for Blackstone to increase its level of involvement in the case. Blackstone's response to the objections was documented in the Court's Order Allowing Professional Fees of Blackstone dated January 31, 2000.[1] Now that Geneva's plan is confirmed and the work of Blackstone is near an end, it appears that Blackstone's involvement in the case never did increase substantially. In fact, Blackstone's involvement in the case fell sharply during the fourth application period as evidenced by measuring average hours per month for all Blackstone professionals and by measuring average hours per month by Senior Professionals.

If, as argued by Blackstone, the first fee period saw an unexpectedly high involvement of Blackstone and the second fee period saw an unexpectedly low involvement, an average of the two should give a fair representation of what Blackstone expected its level of involvement to be in this case. Accordingly, the Court will use an average of the two by which to measure Blackstone's involvement and compensation in this case. Had Blackstone increased its level of involvement as represented to the Court during the second fee hearing, Blackstone may have been compensated the full $150,000.00 per month for each and every month of its engagement. Having failed to increase its involvement in the case as represented, Blackstone's fees must be adjusted.

The average number of hours devoted by Blackstone over the first two fee periods is 447 hours per month.[2] The average number of hours devoted by Blackstone during the fourth fee period is 238.7 hours per month. The ratio of the two shows that Blackstone's involvement in the case during the fourth fee period dropped to 53.4 [3] percent of Blackstone's involvement during the first two fee periods. Consistent with this ratio, Blackstone will be compensated at the rate of $80,100.00 [4] per month for the fourth fee period. Because Blackstone's fourth fee application covers a period of eight months, Blackstone will be awarded the sum of $640,800.00 [5] in fees for the fourth fee period.

With Geneva's case having been confirmed, it seems fair and equitable to apply this same calculation to the second fee period wherein the Court held back $300,000.00 in fees pending confirmation of Geneva's plan. Applying the same approach to the second fee period as it did with the fourth fee period, the Court will divide 410.8 hours per month, the average number of hours devoted by Blackstone during the second fee period, by 447 hours per month, which is the average number of hours devoted by Blackstone over the first two fee periods. The result shows that Blackstone's involvement in the case during the second fee period was 91.9015 percent of Blackstone's involvement during the first two fee periods. Based on this ratio, Blackstone will be awarded interim

1. The Order Allowing Professional Fees dated January 31, 2000, at pages 2–3 states as follows: "Blackstone responds that its appointment was for a fixed monthly fee, that the work performed by Blackstone ebbs and flows with the needs of the debtor, and that the decrease in hours and the shift from senior professionals to junior professionals will likely reverse when the time comes for Blackstone to increase its level of involvement in the case." The order goes on to state at page 4: "If, as argued by Blackstone, its services ebb and flow with the needs of the debtor, then by the time Geneva's plan comes on for confirmation, Blackstone should have ample evidence to support its fee request by showing, among other things, that as the debtor's need for Blackstone's services increased, the involvement by Blackstone's senior professionals increased as well."

2. 483.5 hours per month + 410.8 hours per month divided by two = 447 hours per month.

3. 238.7 hours per month divided by 447 hours per month = 53.4 percent.

4. $150,000.00 per month × 53.4 percent = $80,100.00 per month.

5. $80,100.00 per month × 8 months = $640,800.00.

fees for the second fee application totaling $551,409.00.[6] With $300,000.00 already awarded as an interim payment pursuant to the order of January 31, 2000, this entitles Blackstone to an additional $251,409.00 in interim compensation.

## EXPENSES

■ Blackstone seeks reimbursement of expenses totaling $76,505.62 for the fourth fee application period. Included in that sum is a $30,990.04 legal bill from Simpson Thacher for legal services involved with Blackstone's defense of objections to its second and third fee applications. The Bondholders' Committee argues that, because Simpson Thacher was never appointed to serve as a professional in this case pursuant to 11 U.S.C. § 327, its fees are not compensable under Section 330. Blackstone replies that its retention agreement with Geneva, which was approved by this Court, requires Geneva to indemnify[7] Blackstone for all reasonable expenses including fees, expenses, and disbursements of counsel and that as such Blackstone's legal expenses involved with the defense of its fee applications is reimbursable as an out-of-pocket expense. Blackstone points out that it originally used debtor's counsel to defend its fee applications until the parties became concerned that a conflict of interest may arise as a result of such representation.

Section 327 of the Code provides that the "trustee," with the court's approval, may employ one or more attorneys, etc. There is no provision in the Code for a professional appointed pursuant to Section 327 to seek appointment of another professional to represent its interests at a fee hearing. For attorneys this is not a problem because they are usually well equipped to represent themselves at fee hearings, and they are permitted to seek reimbursement for reasonable fees and expenses incurred in the preparation and defense of their fee applications.[8] To expect Blackstone, a non-attorney professional, to either accept representation from counsel who may suffer a conflict of interest or absorb the cost of representation itself is fundamentally unfair. This is especially true in light of the engagement agreement which specifically provided for reimbursement of such fees by Geneva. Accordingly, the Court will allow the reimbursement of reasonable fees and expenses incurred by Simpson Thacher in defense of Blackstone's fee application.

■ Blackstone supports its request for reimbursement of expenses with a billing statement of Simpson Thacher itemizing $26,226.00 in fees for legal services over a total of 46.5 hours. This computes to a billing rate of $564.00 per hour.[9] To determine the reasonableness of a fee request, a court must begin by calculating the so-called lodestar amount of a fee. A fee is calculated under the lodestar approach by multiplying the number of attorney hours reasonably expended by a reasonable hourly rate. A lodestar calculation should address six factors when considering the reasonableness of a fee application. *Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir.1998). Considering each of the six factors, the Court finds that: (1) the tasks performed by Simpson Thacher would normally be billed to a paying client; (2) the number of hours spent by Simpson Thacher on the assigned

**6.** $150,000.00 per month × .919015 × 4 months = $551,409.00.

**7.** Although Blackstone may have an indemnification agreement approved by the Court, the fees sought by Blackstone only become payable by Geneva upon approval by the Court. Fees that have not been allowed never become due or collectable. *In re Abraham,* 221 B.R. 782, 785 (10th Cir. BAP 1998).

**8.** *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 583 (Bankr.D.Utah 1985) provides that reasonable compensation for time spent in preparing a fee application is compensable because an accurate and detailed application prepared in accordance with the Bankruptcy Code and Rules aids in the administration of the case and does more than serve the self-interest of the person seeking fees.

**9.** $26,226.00 divided by 46.5 hours = $564.00 per hour.

task is high; (3) the work performed by Simpson Thacher was not complex. A considerable portion of the fee is for time spent reviewing, reading, discussing, and preparing for the two hearings where Simpson Thacher appeared; (4) Simpson Thacher was not required to pursue multiple strategies in performing the tasks; (5) multiple responses were not necessitated by the maneuvering of the other side. In fact, Simpson Thacher chose to file no response with the Court and instead relied upon oral argument; and (6) there appears to be no duplication of services by multiple lawyers.

Additionally, the Court will consider the billing rate charged by Simpson Thacher in its fee application. Simpson Thacher's rate of $564.00 per hour is the highest rate of any attorney involved with this case including the senior partners at LeBoeuf, Lamb, Greene & MacRae, L.L.P., Cadwalader, Wickersham & Taft, and Hopkins & Sutter. The application provides no information to support such a fee rate. There is no information regarding the law firm of Simpson Thacher, no information concerning the firm's customary billable rates, and no information regarding the years of practice, experience, and bankruptcy expertise of Mark J. Thompson.[10] Without this information [11] and considering each of the above factors, it is impossible to support the award of fees as requested. Accordingly, the Court will reduce the fee portion of this application by 50 percent.

■ Blackstone seeks $4,764.04 for reimbursement in expenses including $4,335.50 for Simpson Thacher's airfare from the East Coast to Salt Lake City, Utah. The flight of April 2000 is billed at $2,101.00 and includes first class travel from Salt Lake City to New York. The flight of December 1999 provides no detail regarding class of flight and is billed at $2,234.50. The airfare costs incurred by Simpson Thacher exceed the airfare costs of other professionals involved in this proceeding traveling from New York to Salt Lake City. The Court will allow a reasonable airfare. Other professionals traveling from the East Coast to attend the same hearings billed the estate $1,652.00 for airfare. Blackstone will be allowed $1,652.00 in airfare for each of Simpson Thacher's trips. The remainder of Simpson Thacher's expenses will be allowable to Blackstone.

Accordingly, it is hereby:

ORDERED that Blackstone is allowed interim fees in the amount of $640,800.00 for Blackstone's fourth fee application; and it is further

ORDERED that Blackstone is allowed an additional $251,409.00 in fees as interim compensation for Blackstone's second fee application period; and it is further

ORDERED that Blackstone is allowed expenses in the amount of $62,361.12.

---

**10.** Mark J. Thompson is the only attorney from Simpson Thacher to bill time in this application.

**11.** The Court finds it surprising that a firm billing at the rate of $564.00 per hour for legal representation concerning a bankruptcy fee dispute would fail to provide sufficient information to support its own fees under the Code.