**IN RE: WALKER LAND & CATTLE, LLC, Debtor.**

**Bankruptcy Case No. 13–41437–JDP**

United States Bankruptcy Court, D. Idaho.

Signed August 13, 2015

Lee Radford, Moffatt Thomas Barrett Rock & Fields, Chtd, Idaho Falls, Idaho,

---

Attorney for Galusha Higgins & Galusha, P.C.

Robert Maynes, Maynes Taggart, PLLC, Idaho Falls, Idaho, Attorney for Debtor.

Mary Kimmel, Attorney for United States Trustee, Boise, Idaho.

## MEMORANDUM OF DECISION

Honorable Jim D. Pappas, United States Bankruptcy Judge

### Introduction

Both the United States Trustee ("UST") and the chapter 11[1] debtor, Walker Land & Cattle, LLC ("Debtor"), have objected to the Final Application for Professional Compensation ("Final Application") filed in this case by accountant/auditor Judith K. Brower ("Brower").[2] Dkt. Nos. 748, 762, 764. While the UST originally objected to some of Brower's fees, as well as all of her claimed expenses, after she supplemented her application, the UST's objections concerning Brower's fees were resolved, leaving only Brower's claim for reimbursement of expenses in dispute. Dkt. No. 765.

The Court conducted a hearing on the Final Application, and heard oral argument from the parties, on May 6, 2015., at which hearing the parties invited to supplement their briefing on the issues. Dkt. No. 779. Only Brower filed a brief. Dkt. No. 789. Having taken the issues under advisement, and now having considered the record, the parties' submissions, as well as the applicable law, this Memoran-

dum constitutes the Court's findings of fact and conclusions of law, and resolves those issues. Fed. R. Bankr.P. 7052; 9014.

### Facts

The material facts are not contested.

Debtor filed a chapter 11 bankruptcy petition on November 15, 2013. Dkt. No. 1. In connection with Debtor's requests to use cash collateral in the case, secured creditor Wells Fargo Bank, N.A. sought, and the Court approved, a requirement that Debtor obtain audited financial statements of its financial affairs prepared by a certified public accountant. Dkt. Nos. 42, 106. To address this requirement, on March 6, 2014, Debtor filed an application to approve the employment ("Employment Application") of Brower, a CPA, to serve as an auditor.[3] Dkt. No. 219. While the Employment Application said nothing about Brower's potential need to retain counsel to advise and represent her in connection with the audit, the extensive engagement letter attached to the Employment Application did. Dkt. No. 219, Exh. A. In particular, Brower's letter to Debtor and its counsel dated February 17, 2014, which outlined the responsibilities of both Brower and Debtor regarding the audit assignment, included the following paragraph:

> In the event we are requested or authorized by Walker Land & Cattle, LLC or are required by government regulation, subpoena, court order, or other legal process to produce our documents or

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

2. For convenience, references herein to "Brower" are intended to include the accounting firm in which she is a member, and

through which she was employed in this case, Galusha Higgins & Galusha, P.C.

3. Debtor had previously submitted an application to approve a different auditor, but that application was later withdrawn following objections by Wells Fargo Bank and the unsecured creditors committee. Dkt. No. 91, 126, 158, and 163.

our personnel as witnesses with respect to our engagements for Walker Land & Cattle, LLC, Walker Land & Cattle, LLC will, so long as we are not a party to the proceeding in which the information is sought, reimburse us for our professional time and expenses, as well as the fees and expenses of our counsel, incurred in responding to such requests.

*Id.* at 4.

No objection to the Employment Application was filed, and the Court entered an order approving Brower's employment by Debtor on April 16, 2014. Dkt. Nos. 297.[4]

After application, notice and a hearing, and without objection from any party, the Court authorized Debtor to pay interim compensation and expenses to Brower on June 24, 2014, in the amount of $26,364.50. Dkt. No. 385. The information submitted with this application showed that Brower worked on the audit during April, May, and June 2014, and that she submitted the completed audit report in early July 2014. Dkt. Nos. 344, Exh. B; 766, Exh. E; 789.

On October 14, 2014, a notice of intent to take Brower's deposition in connection with the bankruptcy case was filed by Wells Fargo. Dkt. No. 517. A subpoena was issued by Wells Fargo's counsel directing Brower to appear on November 10, 2014 at 9:00 a.m. to testify, and to produce, in general, "[a]ll Documents used or relied upon in support of and in preparation of the Financial Statements and Independent Auditor's Report[s]...." Dkt. No. 517–1 at 4. Apparently, after receiving the subpoena, Brower was informed by Debtor's counsel that he could not represent her in connection with the deposition and document production, and that she should obtain other counsel. The affidavit Brower submitted to support the Final Application indicates that, by November 1, 2014, Brower had hired attorney Lee Radford to assist with the production of documents, and to act as her counsel as she appeared and offered testimony pursuant to the subpoena. Dkt. No. 749, Exh. C. On November 25, 2014, Brower was again subpoenaed by Wells Fargo, this time to appear and testify before this Court at the consolidated confirmation hearing concerning the Debtor's and Wells Fargo's proposed chapter 11 plans, which she did on December 17, 2014. *See,* Hearing Minutes, Dkt. No. 644.

Radford billed Brower $7,735 for his legal services, which was paid. On April 10, 2015, Brower filed her Final Application. Dkt. No. 748. It was prepared by Radford, and seeks $38,797.25 in professional fees, and $7,735 as reimbursement for Radford's charges. *Id.* The UST objected to some of Brower's time entries,[5] as well as the proposed reimbursement of Brower for Radford's fees as an expense. Dkt. No. 762. Debtor joined the objection, contending that Wells Fargo should be required to pay Radford's legal fees. Dkt. No. 764.

4. At the time the Court entered the order approving Brower's employment, it inserted the following provision in the proposed order submitted by Debtor's counsel:

**APPROVAL OF THE AUDITOR'S COMPENSATION AND EXPENSES SHALL BE SUBJECT TO APPROPRIATE APPLICATION, NOTICE AND A HEARING, ALL PER 11 U.S.C. § 330.**

Dkt No. 279. Debtor later filed an amended application to employ Brower to serve as Debtor's accountant in addition to her employment as an auditor, so that she could assist Debtor in the preparation and filing of its 2013 tax returns. Dkt. No. 338. Again, no objection was filed, and the amended application was approved by the Court on June 17, 2014. Dkt. Nos. 379, 381.

5. Brower provided more detail regarding her own fees, and removed the amounts charged for entries relating to her work on Debtor's tax returns, which reduced the amount requested for her own fees by $396. Dkt. No. 765. This clarification satisfied the UST.

### Conclusions of Law and Disposition of the Issues

#### A. The Code/Rules Regarding Estate–Employed Professionals

■ In the normal course of a bankruptcy case, to competently perform its duties, a trustee, or a chapter 11 debtor in possession,[6] often must employ an attorney, auctioneer, accountant, appraiser, or other professional. However, bankruptcy cases are highly-regulated, and significant controls regarding professionals have been imposed by Congress in such cases, in part to guard against diversion of a bankruptcy estate's scarce resources to payment of unnecessary or excessive professional expenses. In particular, §§ 327 and 330, and Rules 2014 and 2016, prescribe substantive and procedural rules applicable to the employment and payment of estate professionals in bankruptcy cases. Among other things, the Code and Rules require timely applications, notice to interested parties, and bankruptcy court approval of a any proposal to employ a professional, and concerning the trustee's or debtor in possession's transactions with them. To give teeth to these standards, strict compliance with the prescribed procedure is crucial, such that a professional "cannot recover fees for services rendered to the [bankruptcy] estate unless those services have been previously authorized by a court order." *In re Melton*, 353 B.R. 901, 903 (Bankr.D.Idaho 2006) (quoting *Atkins v. Wain, Samuel & Co. (In re Atkins)*, 69 F.3d 970, 973 (9th Cir.1995)); *In re Iwasa*, 361 B.R. 162, 166 (Bankr.D.Idaho 2007).

As an initial matter, estate professionals must have their employment approved by the bankruptcy court in advance of performing any compensable services:

[a] trustee [or debtor in possession], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

§ 327(a). As can be seen, the conditions on approval of the employment of a professional under § 327(a) include that the trustee or debtor in possession show, and that the bankruptcy court be persuaded, that the professional's employment is necessary, and that the person proposed to be employed is disinterested and does not hold an interest which is adverse to the estate. If the employment is approved, the Code requires the professional to return to the Court, after further application, notice to parties, and a hearing, to secure approval of any payment from the estate, with any such amounts limited to only those representing "reasonable compensation for actual, necessary services rendered ... and reimbursement of actual, necessary expenses." § 330(a)(1); *see also Baker Botts L.L.P. v. ASARCO LLC*, —— U.S. ——, 135 S.Ct. 2158, 2163, 192 L.Ed.2d 208 (2015).

Here, all parties acknowledge that Brower's employment by Debtor as an estate professional was properly sought and approved by the Court. However, it is also clear that Brower's lawyer, Radford, was not employed as an estate professional under § 327(a), because it is undisputed that he was to represent Brower, not

---

**6.** Most of the Code provisions and Rules identify the trustee as the party entitled to employ professionals on behalf of a bankruptcy estate. *See* § 327(a); Rule 2014(a). However, with some exceptions not relevant here, § 1107(a) grants a chapter 11 debtor in possession the rights and powers of a trustee, including employment of estate professionals.

Debtor or the bankruptcy estate.[7] Thus, Radford may not receive payment of his compensation directly from Debtor under § 330(a), nor has that payment been sought in this case.

## B.  Professional Fees As Expenses of Estate Professionals

Distinct from any claim for her own compensation in this case, Brower's request to recover Radford's fees comes to the Court via an alternate route: as a claim for a reimbursable expense she incurred in connection with her employment by Debtor.  Brower reminds the Court that her engagement letter with Debtor authorized her to retain her own lawyer if the need arises, and that it allows Brower to recover from Debtor any fees she incurs for that representation.  Brower insists that, because § 330(a)(1)(B) provides for reimbursement to her for any "actual, necessary expenses" incurred as an estate-employed professional, Debtor should reimburse her for the attorneys fees she paid Radford.

In opposition, both the UST and Debtor contend that, as a matter of law and bankruptcy policy, professional fees simply cannot constitute a proper "expense" for purposes of reimbursement under § 330(a)(1)(B).  Because a professional bears the burden of proving entitlement to the fees and costs requested under § 330(a), *In re Leed Corp.*, 97 IBCR 95, 96 (Bankr.D.Idaho 1997), they urge the Court to reject Brower's request for reimbursement.

So should Brower, as an approved estate professional, be able to recover the attor-neys fees she paid to Radford as an "expense" under § 330(a)?

### 1.  Case Law Supporting Brower's Claim

The case law is scant on this subject. While the Court was able to locate decisions exploring this question generally, there is no controlling authority in this Circuit, and the holdings by the courts are not uniform in either their outcome or analytical approach.

For example, in *In re Am. Preferred Prescription, Inc.*, 218 B.R. 680 (Bankr. E.D.N.Y 1998), the chapter 11 debtor, whose auditor "BDO" had been properly employed and had completed most of the audit services work, moved to disqualify BDO.  *Id.* at 687.  BDO retained counsel to oppose the debtor's motion.  Ultimately, the bankruptcy court concluded that the debtor's disqualification motion was base-less.  When BDO's fee application was filed, it included a request for reimbursement of about $23,000 for its counsel's legal fees as an expense.  In approving this request, the bankruptcy court rejected the debtor's argument that BDO's counsel's employment needed to be separately approved under § 327(a) as a condition of allowance, stating:

> In this case, BDO was not required to obtain Bankruptcy Court approval prior to employing counsel to represent it in a dispute over BDO's retention ... [because] BDO merely seeks Court authorization for payment of [its defense costs], which it necessarily incurred in connection with the work performed on behalf of the Trustee.  The fact that the costs incurred by BDO were in the nature of

---

7.  Had Brower, or Debtor, attempted to obtain Court approval of the employment of Radford as an estate professional under § 327(a), the application would likely have been denied because Radford's law firm was actively repre-senting a major secured creditor in the bankruptcy case.  Because of this, Radford was not "disinterested." *See* § 327(a); § 101(14)(C).

legal fees and such incidental costs does not change the Court's analysis. Such expense is to be scrutinized as would any other expense, in the context of this case.

*Id.* at 686 (internal citation omitted). The bankruptcy court, relying heavily on the fact that it was the debtor's own actions that caused BDO to incur the legal fees associated with defending the motion to disqualify, held that, under § 330(a)(1)(B), the fees were an actual and necessary expense incurred by BDO in order to perform its duties, and granted reimbursement in full. *Id.* at 688.

In *In re Geneva Steel Co.*, 258 B.R. 799 (Bankr.D.Utah 2001), Blackstone, a financial advisor whose employment by the debtor was approved by the bankruptcy court, retained legal counsel to defend its second and third fee applications in response to objections by the chapter 11 trustee and the bondholder's committee. In response to the objecting parties' point that the employment of Blackstone's legal counsel had not been approved by the bankruptcy court pursuant to § 327(a), the bankruptcy court noted that there is "no provision in the Code for a professional appointed pursuant to Section 327 to seek appointment of another professional to represent its interests at a fee hearing." *Id.* at 803. It observed:

> To expect Blackstone, a non-attorney professional, to either accept representation from [debtor's] counsel who may suffer a conflict of interest or absorb the cost of representation itself is fundamentally unfair. This is especially true in light of the engagement agreement which specifically provided for re-

imbursement of such fees by Geneva. Accordingly, the Court will allow the reimbursement of reasonable fees and expenses incurred by [legal counsel] in defense of Blackstone's fee application. *Id.*[8]

In *In re Borders Grp., Inc.*, 456 B.R. 195 (Bankr.S.D.N.Y.2011), the bankruptcy court authorized Mercer to provide "compensation consultant" services to the chapter 11 debtor. Mercer's engagement letter, referenced in the bankruptcy court's retention order, provided that Mercer may charge the debtor for "legal fees associated with our retention as a professional and subsequent fee application[s] with the U.S. bankruptcy court if required." *Id.* at 201. When Mercer later filed its fee application, it included a request for reimbursement of over $16,000 in legal fees, incurred for retention matters, preparing fee applications, and for a small amount of time expended by counsel to advise Mercer regarding implementation of the debtor's employee program.

When Mercer sought to recover its legal expenses, the United States Trustee objected because Mercer's counsel's employment had not been approved by the bankruptcy court. When it considered Mercer's fee application, including the challenged legal expense component, the bankruptcy court held that Mercer's law firm's employment did not have to be separately approved by the bankruptcy court to allow for the reimbursement to Mercer for counsel's charges. In doing so, the *Borders Grp., Inc.* court noted the existence of a split in the case law in the Southern District of New York on this issue.[9] The court held that:

> the facts, or as unreasonable, and awarded a reduced amount. 258 B.R. at 804.

**8.** After the bankruptcy court considered the specific services provided, and legal fees charged by counsel, it declined to approve the amount requested as either not supported by

**9.** The contrary decisions referenced by the bankruptcy court were entered as oral rulings

nothing in the language of section 327 suggests that counsel retained to represent a retained professional in connection with its retention or fee applications should or even could be retained under section 327—that is work being done for the professional, not for the estate. And nothing in section 327 excludes such expenses as "necessary" where the work was required to comply with the Bankruptcy Code, Rules, or General Orders.

*Id.* at 208. Declining to follow the other local cases advocating for a per se rule providing that, unless a professional is employed by the estate, for whatever purposes, it cannot receive any payment from the bankruptcy estate, the court summarized its reasoning:

> Attorneys who are not retained under section 327 cannot be compensated—directly or indirectly—for any work performed for the estate. Retained professionals that retain outside counsel only to represent the professional in connection with retention or preparation of fee applications may be reimbursed for reasonable expenses of such counsel when the engagement agreement and retention order provide for such expense reimbursement. Such counsel need not be retained under section 327. As in all cases, requests for expense reimbursement are subject to court approval for reasonableness.

*Id.* at 213.

### 2. Case Law Contrary to Brower's Claim

The decision in *In re Crafts Retail Holding Corp.*, 378 B.R. 44 (Bankr.E.D.N.Y. 2007), represents the other side of the coin, wherein the bankruptcy court adopts a per se rule prohibiting the reimburse-

ment of non-retained professionals' fees as expenses. In that case, the chapter 11 debtor's court-approved financial advisor retained counsel to aid it in the retention process. The debtor's employment application referenced an engagement letter which included a provision that essentially provided for reimbursement to the advisor of up to a certain amount of "no-look" legal expenses incurred by the financial advisor. Following objections to the employment application by other parties, the engagement letter was largely revised, and was thereafter approved. The financial advisor later submitted a fee application which included $35,000 in legal expenses for its own legal bills, to which the United States Trustee and the unsecured creditor's committee objected.

The bankruptcy court rejected the financial advisor's expense request noting that the rule forbidding compensation to professionals for services rendered absent employment of that professional by the bankruptcy court was adopted to control serious abuses, and therefore should be strictly enforced. *Id.* at 49 (quoting *In re Eureka Upholstering Co., Inc.*, 48 F.2d 95 (2d Cir.1931)). The court highlighted other policies supporting this rule, including that judicial approval "entails a court's independent, detached determination that the applicant satisfied the statutory requirements under § 327," including disinterestedness, lack of an adverse interest, and the court's finding that the proposed services are necessary under the circumstances. *Id.* at 49. The bankruptcy court observed that "there is no provision in the Bankruptcy Code authorizing a court approved professional like [the financial advisor] to, in turn, employ another professional." *Id.* (citing to Rule 2014(a)). The

in *In re Blockbuster, Inc., et al.*, Case No. 10–14997 (Bankr.S.D.N.Y.) and *In re Sbarro, Inc., et al.*, Case No. 11–11527 (Bankr.S.D.N.Y.),

transcripts of which the *Borders Group* court was given and had reviewed. 456 B.R. at 199.

court concluded that the "morphing of attorney compensation into a garden variety expense item is unacceptable to this Court. If such efforts at transformation were allowed, the prophylactic protections afforded by the statutory requirement of pre-appointment court approval would be circumvented by a mere shifting of terminology." *Id.* at 49–50.

The *Crafts Retail Holding* court also dismissed the financial advisor's argument based upon the parties' agreement in the engagement letter that its legal costs should be reimbursed, explaining that "absent statutory authority, claimed contractual rights or asserted principles of equity alone do not constitute cognizable bases for an award of compensation or reimbursement of expenses in bankruptcy cases." *Id.* at 50 (citing cases). And it offered an additional reason for denying reimbursement for the requested expenses worthy of mention here: "Moreover, the legal fees incurred did not relate to the completion of any financial advisory services provided by [the financial advisor] and were not necessary to the completion of tasks for which [the financial advisor] was responsible." *Id.* at 51.

At least one other court has reached the same conclusion as *Crafts Retail Holding.* In *In re Auto Parts Club,* the bankruptcy court concluded:

[s]ince they are expressly listed in 11 U.S.C. § 327(a), attorneys' employment must be pre-approved in order to receive payment from the estate under 11 U.S.C. § 330. This Court does not recognize a difference between services rendered at the direction of the debtor-in-possession and those rendered at the direction of a professional employed by the debtor-in-possession. Either way the estate bears the expense.

191 B.R. 848, 850 (Bankr.S.D.Cal.1996). As can be seen, the court was concerned that, by requiring the bankruptcy estate to "reimburse" its legal fees, a professional might elude the judicial inquiry associated with employment of estate professionals required by § 327(a).

### 3. Ninth Circuit BAP Case Law

As can be seen, these decisions are divided in their conclusions. And, as near as the Court can tell, there is no binding authority within the Ninth Circuit on this issue. Even so, the Court is guided by the reasoning of the Bankruptcy Appellate Panel in *Max Rouse & Sons, Inc. v. Specialty Plywood, Inc. (In re Specialty Plywood, Inc.),* 160 B.R. 627 (9th Cir. BAP 1993), *opinion withdrawn following settlement,* 166 B.R. 153 (9th Cir. BAP1994).[10]

In that case, an auctioneer was hired by the chapter 11 debtor, with bankruptcy court approval, to sell its excess equipment. The equipment sold for substantially less than its estimated value, and the debtor thereafter objected to the auctioneer's fee request, insisting that the auctioneer should receive only a prorated share of the sale proceeds, along with other administrative claimants. At this point, the auctioneer retained an attorney to defend its fee application. The auctioneer requested approval of $1,900 in attorneys fees as a reimbursable expense. The bankruptcy court disallowed the legal fees in full, and the auctioneer appealed to the Bankruptcy Appellate Panel.

---

**10.** The BAP withdrew its published decision after the parties settled their dispute, dismissed an appeal to the Ninth Circuit, and sought and obtained the withdrawal and "decertification" of the bankruptcy court's decision. 167 B.R. 603 (Bankr.C.D.Cal.1994) (ordering that the prior decision, found at 137 B.R. 960 (Bankr.C.D.Cal.1992), be vacated and decertified).

On appeal, the BAP analyzed the several bases offered to support the auctioneer's claim for reimbursement of the auctioneer's legal expenses. The Panel first concluded there was no contractual right to reimbursement of fees as an expense, because while both California law and the terms of the auctioneer's employment contract provided for recovery of its attorney fees under certain circumstances, none of those circumstances were implicated in the bankruptcy case. *Id.* at 631–32.

The BAP also rejected the auctioneer's argument that § 330(a) provided a statutory basis to recover the auctioneer's legal fees as compensation because those fees requested were not those of the approved professional, the auctioneer, but instead were to pay for services provided by a separate professional, the auctioneer's lawyer, whose employment had not been approved by the bankruptcy court. *Id.* at 632.

Finally, turning to the auctioneer's contention that the legal fees were reimbursable as "actual, necessary expenses" incurred by the auctioneer under § 330(a)(2), now recodified as § 330(a)(1)(B), the Panel cited to cases holding that an expense is only "necessary" for purposes of this Code provision when it was required to accomplish the task for which the professional was employed. *Id.* at 632 (citing *In re Gillett Holdings, Inc.,* 137 B.R. 462, 471 (Bankr. D.Colo.1992); and *In re Grabill Corp.,* 110 B.R. 356, 362 (Bankr.N.D.Ill.1990)). The BAP pointed out that, in *Specialty Plywood,* the auctioneer had already completed the auction, and only afterward retained counsel and incurred attorney fees to secure payment for its work from the estate. The BAP stated:

> Applying these standards in this case, [the auctioneer firm] fails, as a matter of law, to establish its right to reimburse-ment of the legal fees. The fees at issue were incurred in [the auctioneer firm's] attempt to recover compensation and expenses. They were not required to accomplish the auction—the task for which [the auctioneer firm] was retained.

*Id.* at 633; *see also In re DN Assocs.,* 165 B.R. 344, 355 (Bankr.D.Me.1994); *In re Edisto Res. Corp.,* 160 B.R. 736, 739 (Bankr.D.Del.1993); *In re Columbia Gas Sys.,* 150 B.R. 553, 555 (Bankr.D.Del.1992). Accordingly, because the legal fees incurred by the auctioneer were not necessary to conducting the auction, they were not reimburseable, and the BAP affirmed the bankruptcy court's denial of the attorney fees claimed as expenses under § 330(a)(2). *Id.* at 633.

### 4. Application of the Law to the Facts of this Case

As pointed out above, the case law on this issue is a mixed bag. But while the BAP's opinion in *Specialty Plywood* was withdrawn following the parties' settlement of the underlying issues, the Court finds the Panel's reasoning in that decision sound, especially in light of the other decisions interpreting § 330(a)(1)(B) to require that "necessary" expenses are limited to those " required to accomplish the task for which the professional was employed." *See In re Comput. Learning Ctrs., Inc.,* 285 B.R. 191, 226 (Bankr.E.D.Va.2002) (citing *In re Mahaffey,* 247 B.R. 823, 825 (Bankr.D.Mont.2000)); *In re Grabill Corp.,* 110 B.R. at 362; *see also* 3 Collier on Bankruptcy ¶ 330.04[1] ("Expenses are 'necessary' when incurred if they were properly required to accomplish the task for which the professional was employed."). Without such a limitation, potentially, whenever a bankruptcy court-approved professional deems it necessary to employ another professional to protect its interests in the bankruptcy case, that cost would be taxed to the bankruptcy estate,

effectively negating the Code's regimen requiring prior notice to other interested parties, and the necessary scrutiny by the court, before committing the limited resources of the bankruptcy estate to the payment of professional compensation.

■ Applying the rationale of *Speciality Plywood* to the facts presented here, the Court holds that the services provided by Radford were not required (*i.e.*, "necessary") to accomplish the purpose for which Brower was employed—performing an audit of the Debtor's financial affairs. While the Court does not question Brower's good faith in deciding to retain counsel to advise her when she was later called upon to testify about the audit, and to produce the financial documents used in the process, the Wells Fargo subpoena was issued, and the Brower deposition took place, some three months after she had completed the audit and submitted her report. Moreover, it is telling that the discovery occurred at the behest of a secured creditor hoping to discredit Debtor's operations and proposed plan via the data contained and opinions expressed in Brower's audit report. Indeed, the creditor pursued the same strategy by calling Brower to testify at the confirmation hearing. Because Brower did not participate in the discovery process until after she finished the project for which Debtor employed her, and because the time she spent attending the deposition, testifying, and producing documents was not a necessary component of producing the actual audit, the Court concludes that the legal fees Brower incurred when she hired Radford to advise and represent her were not "necessary" to completion of the task Brower was hired to

perform per the meaning of that term in § 330(a)(1)(B).

This result obtains despite the authority ostensibly granted to Brower in the engagement letter to hire a lawyer, and to charge Debtor for the fees Brower thereby incurred. While the terms of the engagement letter are clear enough to cover the Radford fees, as noted above, the Court's order approving Brower's employment limited her entitlement to payment of compensation and expenses to only those amounts allowed under § 330. Moreover, only the bankruptcy court, not the debtor in possession and professional, can determine, applying the standard embodied in § 330(a)(1)(B), as developed in the case law, what expenses were necessary. *See Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011 (9th Cir.2012) (quoting *In re Pease*, 195 B.R. 431, 434–35 (Bankr.D.Neb. 1996)) (in the context of a motion to compel arbitration pursuant to an underlying contract, the Ninth Circuit held that "any attempt by a creditor in a private pre-bankruptcy agreement to opt out of the collective consequences of a debtor's future bankruptcy filing is generally unenforceable. *The Bankruptcy Code preempts the private right to contract around its essential provisions." Id.* at 1026 (emphasis added); *see also* § 330(a)(2) (providing that, upon request of a party, or on its own motion, the Court may award compensation to an estate professional that is less than the amount requested).

### Conclusion

Brower was perhaps justified to hire a lawyer. Whether she may recover the costs she thereby incurred in the highly-

regulated context of a chapter 11 case is a different matter. Given the facts of this case, the Court concludes that Brower has not demonstrated that Radford's legal expenses were necessary to her completion of the audit, and thus, Brower's request for reimbursement of those expenses will be denied.[11] The Court sustains the UST's and Debtor's objections to Brower's claim in the Final Application for reimbursement of the $7,735 for Radford's legal fees. The compensation requested in the Final Application will be approved. Counsel for Brower shall submit an appropriate form of order for entry by the Court. Counsel for the UST and Debtor shall approve the form of that order.

---

11. The Court's ruling is founded upon the facts of this case. Because it need not do so, like the Panel in *Specialty Plywood,* the Court does not decide whether prior bankruptcy court approval of an estate professional's retention of its own professional is required as a matter of law as a condition to recovering the resulting fees as an expense under § 330(a)(1) in all circumstances. *Id.* at 632 n. 7. Nor does the Court address Debtor's contention that creditor Wells Fargo Bank should pay Radford's fees, as that claim and issue are not properly presented to the Court via Brower's application.